IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NOVA CHEMICALS, INC.** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**SEKISUI PLASTICS CO., LTD.,** )<br>)<br>Defendant. ) | 2:06cv478<br>Electronic Filing |

## OPINION

Before the court is a 12(b)6 motion to dismiss counterclaims filed by Sekisui Plastics Co., Ltd. (Sekisui) in response to Nova Chemicals Inc.'s (Nova) Complaint for Declaratory Judgment. In its counterclaims, Sekisui seeks damages for an alleged breach of a license agreement, (originally entered into with Arco Chemical Company but later acquired by Nova under an asset purchase agreement), for use of patented and confidential technology and the sale of the resultant products. This breach, Sekisui maintains, occurred when Nova began to sell products originally controlled by the agreement in certain Asian countries.

Nova filed the instant motion arguing that the licensing agreement expired in 1995, and that Sekisui is attempting to enforce a right that does not exist under any reasonable construction of the agreement. The license at issue, which had a term of ten years when fully optioned, gave Nova the right to use certain patents and trade secrets of Sekisui in its North American plants, and to sell the resultant products anywhere in the world except certain enumerated Asian countries.

Nova maintains that the term of the license is also applicable to the Asian exclusion clause, and that therefore the expiration of the license terminated its commitment under this clause. Sekisui argues that nothing in the license indicates that the Asian exclusion would be

anything other than permanent, and that Nova's sale of the covered products in the Asian countries is therefore a breach of the agreement, even though it is undisputed that the rest of the agreement and any relevant patents have expired.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Under this standard a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. Nami, 82 F.3d at 66.

In general, the inquiry will be based on "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. at 1196. Here, Sekisui's counterclaims are based entirely on the written agreement between Sekisui and Nova, so it is entirely appropriate that the text of this agreement, attached by the moveant to the present motion, be considered.

2

In order to grant the present motion, Sekisui's counterclaim, seen through the lense of the agreement, must fail to state a claim. Sekisui demands relief for an alleged breach of contract, a claim clearly cognizable under law if the contract admits of any reasonable construction under which the actions of the counterclaim defendant constituted a breach. If there is a plausible construction of the contract that places the counterclaim defendant in breach, the motion for dismissal must be denied.

The disputed language is found in section 5.4 of the agreement, and reads as follows:

> Following the payment by ACC to Sekisui of said money under Paragraph 6.1(a)(3), an exclusive license with the right to sublicense is automatically granted to ACC during the term of this agreement under all [enumerated Sekusui Patents and technologies] to produce, sell and use all PRODUCTS and other resinous materials in the LICENSED TERRITORY. Moreover, ACC and its sublicense shall have the right to sell PRODUCTS and other resinous materials in all countries of the world except in the following countries: [specified Asian countries].

There are at least two general ways to interpret the parties' assent to the exclusion clause: (1) the parties were simply acknowledging that the Asian countries are not included in the current agreement, or (2) it was understood by the parties that Nova was agreed not to sell in the excluded countries (for either a set or indefinite time period).

Under the first interpretation, Nova would not breach by selling in the excluded countries after (or for that matter, before) the expiration of the license term, since, under this interpretation, the Asian countries are outside of the scope of the license. In assenting to the exclusion term, Nova's predecessor in interest was simply acknowledging that the parties had no agreement with respect to the Asian countries. Though Nova would not breach any agreement, Nova would correspondingly not be clothed by any agreement with respect to these countries either, and would be fully exposed to whatever Intellectual Property remedies Sekisui had available. Under this interpretation, Sekisui's remedy would be through IP protection law, not contract. If it were clear that the agreement precluded any other interpretation, Sekisui's counterclaim, which is based entirely on contract principles, would fail to state a claim.

If there is a reasonable construction of the contract under which Sekisui states a claim, the

3

second interpretation, under which Nova affirmatively agrees not to sell in the Asian countries, must serve as the starting point. Furthermore, since it is beyond dispute that the rest of the agreement has terminated, it must also be established that it is reasonable to interpret the agreement as providing for a different term for the Asian exclusion than for the rest of the agreement. If it is reasonable to construe the contract as containing an agreement by Nova not to sell in the excluded Asian countries, and it is reasonable to construe the applicable term of this clause as indefinite, then Sekisui states a claim for relief, and the present motion must be denied.

Stripped to its essence, the disputed language reads as follows:

> [After payment by Nova] an exclusive license ... is ... granted to [Nova] during the term of this agreement to produce, sell and use [the technology and the product] in the LICENSED TERRITORY ...and ... to sell [the product] in all countries of the world except [Asian countries].

Sekisui clearly agrees that Nova shall have the right to produce, use, and sell in the licensed territory, and to sell in most of the world, and Nova clearly agrees to pay. The question is whether acquiescing to the clause excepting Asia from the granted sales territory amounts to an agreement by Nova not to sell in Asia. The text is at best unclear. The most obvious interpretation is that the status quo ante was never disturbed with respect to the Asian countries, which would be equivalent to the first interpretation discussed above. Under this construction, if Nova began selling the product in Asia the day after the agreement took effect, the result would be no different than had it done so the day before the agreement took effect. Patents might have been infringed, or trade secrets misappropriated, but no contract would have been breached.

However, based on the tabula rosa upon which the instant motion must be evaluated this interpretation is not the only reasonable one. If the license were granted only affirmatively (i.e., A has the right to sell in territory X) it would be clear that only X is covered by the agreement, and that no agreement has been reached with respect to any other territory. If another clause were added to this affirmative grant, in which the agreement not to sell outside of the licenced territory is made explicit (i.e., A has the right to sell in territory X, and agrees not to sell outside of this territory), then it would be obvious that there was some agreement with respect to areas lying

4

outside of the licensed territory, and all that would remain to be resolved would be the time period applicable to this part of the agreement. As the license was written (A has the right to sell everywhere, except Y), the exclusion of territory outside of X (in this case the entire world outside of parts of Asia) was made explicit, but what A is agreeing to is not. Since the phrasing of the agreement itself does not make explicit whether A is agreeing that Y is outside of the scope of the agreement, or is making a covenant not to sell outside of the licensed territory, both constructions appear to be reasonable at this juncture, and only the relevant time period must be considered.

     For the purpose of further examination, we will assume that the contract can be construed to mean "during the term of this agreement, A has the right to sell in territory X, and agrees not to sell outside of this territory" and focus on determining whether there is a reasonable interpretation under which the term of the exclusion is different from "the term of the agreement." If it were clear that the time period applicable to the exclusion clause were the same as that for rest of the license (i.e., if the license were written "during the term of this agreement, A has the right to sell in X, and agrees not to sell outside of X during this same term"), it would be clear that no valid contract claim exists after the term specified in the agreement has expired. If it were clear that the term applicable to the exclusion were indefinite (i.e., if the license were written "during the term of this agreement, A has the right to sell in X, but agrees to never sell outside of X"), it would be clear that a valid contract claim exists even after the "term of the agreement" has expired.

     In light of the way the license was written, in which no specific term for the exclusion is set forth, the most obvious interpretation might be to assume that the term alluded to for the grant is also applicable to the exclusion. But there is just enough ambiguity to make the latter interpretation reasonable, which is to say that it may be that the counter-claim plaintiff "can prove" a "set of facts in support of his claim that would entitle him to relief." Conley, 355 U.S. 41, 45-46. In this case the counter-claim plaintiff might be able to prove that it never intended to

cede any rights to its Asian markets, that it would never have signed the agreement if it could not extract a covenant from the licensee not to enter this market, and that Nova understood this when entering into the agreement. It might not be particularly likely that Sekisui can establish these facts, but nothing in the imprecisely worded phrase in the portion of the agreement at issue precludes Sekisui from doing so. Under the generous standard applicable to a 12(b)(6) motion, this is enough to save its counterclaims from dismissal. Accordingly, the motion must be denied.

Date: 1/9/07

David Stewart Cercone
United States District Judge

cc:   John M. McIntyre, Esquire
      Kevin S. Katona, Esquire
      Reed Smith
      435 Sixth Avenue
      Pittsburgh, PA 15219

      Michael J. McCaney, Jr., Esquire
      Flamm, Boroff & Bacine, PC
      794 Penllyn Pike
      Blue Bell, PA 19422